**Richard MURILLO et al.,**
**Plaintiffs-Appellants,**

v.

**F. David MATHEWS, Secretary of the U. S. Department of HEW, et al.,**
**Defendants-Appellees.**

No. 76–3533.

United States Court of Appeals,
Ninth Circuit.

Dec. 29, 1978.

**760**

J. Kendrick Kresse, Ralph Santiago Abascal, San Francisco, Cal., for plaintiffs-appellants.

Verrell L. Dethloff, Jr., Baltimore, Md., for defendants-appellees.

Before MERRILL and CHOY, Circuit Judges, and VON DER HEYDT,* District Judge.

CHOY, Circuit Judge:

Plaintiffs below appeal from the district court's dismissal of their suit for lack of subject matter jurisdiction. We vacate the judgment of the district court and remand.

## I. Statement of the Case

In January of 1974, appellant Murillo's father allegedly went repeatedly to Social Security Administration (SSA) offices and orally inquired about benefits for appellant Murillo under Title XVI of the Social Security Act, 42 U.S.C. § 1381. On each occasion he was allegedly erroneously informed orally that his son was not eligible, and he did not make a written application for benefits. In May, 1974, he submitted a written application which was granted.[1] Because the SSA pays benefits beginning with the month in which the application is filed, Murillo's benefits began in May and not January. The May application, however, did not ask the SSA to provide benefits for the period from January to May.

In August, 1975, Murillo and two organizations purporting to represent the aged and the handicapped[2] filed suit on behalf of themselves and "all others similarly situated" against the Secretary of Health, Education and Welfare and the Commissioner of the SSA. They alleged that the present SSA practice of offering informal advice about eligibility which potential applicants may view as denials of eligibility and which may deter potential applicants from filing reviewable written applications, contravened federal statute and the due process clause of the federal constitution. Appellants asked that the court declare the present practice illegal and unconstitutional and enjoin that practice, award costs and reasonable attorneys' fees, and "[i]ssue a writ of mandate commanding defendants . . . forthwith to provide reasonable notice and opportunity for a hearing to any person who has claimed to be an eligible individual, who was subsequently informally denied eligibility . . . and is in

---

* The Honorable James A. von der Heydt, Chief United States District Judge for the District of Alaska, sitting by designation.

1. The Government notes that the formal written application was actually filed on June 14, 1974. Benefits were dated from May because the SSA had prepared a Record of Claimants Intent to File following a telephone call of May 29, 1974, seeking benefits for Murillo.

2. Those organizations are the Disabled and Blind Action Committee and California Legislative Council for Older Americans. It should be noted that the Government contends that be-

cause these organizations could not file applications for benefits on their own behalf, they lack standing to challenge the Government's procedure. The Government also contests the propriety of class action status. Because there is no allegation that Murillo, the two organizations or their members, or any member of the purported class formally invoked the administrative processes, our conclusions set forth *infra* are equally applicable to all. We therefore need not address the propriety of class action status or the standing of the two appellant organizations.

disagreement with such determination . . . ."

The district court held that it lacked subject matter jurisdiction over the suit. The district court rejected claims that it had jurisdiction under the Administrative Procedure Act, 28 U.S.C. § 1331, 28 U.S.C. § 1343(3), 28 U.S.C. § 1361, and 42 U.S.C. § 405(g).

## II. *Utilization of Administrative Remedies*

■ We believe that the district court prematurely considered whether it had jurisdiction under applicable federal statute. Appellants have not alleged that they, or any of them, have ever invoked the administrative processes of the SSA or Secretary regarding the instant claim that "informal denials" are inappropriate or illegal. Given this failure ever to address formally their contention to the SSA or Secretary, we hold that the district court could not properly take jurisdiction over the cause even if there existed a statutory basis for subject matter jurisdiction over this type of claim.[3]

The courts have repeatedly recognized the importance of allowing an administrative agency to consider claims and objections prior to judicial action. The Supreme Court has recently written that the purpose of the exhaustion requirement is to permit an agency to "perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." *Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972); *see McKart v. United States*, 395 U.S. 185, 193–

95, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Casey v. FTC*, 578 F.2d 793, 798 (9th Cir. 1978); *Montana Chapter of Association of Civilian Technicians, Inc. v. Young*, 514 F.2d 1165, 1168 (9th Cir. 1975).[4]

This court has also appreciated that affording the administrative agency an opportunity to resolve a dispute is especially important when administrative action may obviate the need for adjudication of constitutional issues:

We do not disagree with plaintiff's contention that federal administration agencies have neither the power nor competence to pass on the constitutionality of statutes. [Citation omitted.] However, the doctrine of exhaustion of administrative remedies is not prevented from being applied solely by the fact the party applying for judicial relief urges a violation of rights secured by the federal constitution. Where relief may be granted on other nonconstitutional grounds, exhaustion is required. [Citation omitted.] The necessity of deciding the constitutional issues may well be avoided by the grant of alternative administrative relief. . . As the Supreme Court stated . . . :

"[T]he very fact that constitutional issues are put forward constitutes a strong reason for not allowing this suit either to anticipate or to take the place of [a final judicial or administrative procedure]. When that has been done, it is possible that nothing will be left of appellants' claim . . . ."

*Montana Chapter of Civilian Technicians*, 514 F.2d at 1167–68.[5] *See Renegotiation*

---

3. We therefore do not reach the issue of statutory bases of jurisdiction discussed by the district court.

4. These policies apply with special force here because appellants have never invoked any of the available administrative processes. *See Casey v. FTC*, 578 F.2d 793, 798 & n.8 (9th Cir. 1978).

5. Professor Davis has written:
   The Ninth Circuit has taken a position that seems sound enough except for violating the clear provisions of § 704 of the APA. . . . The court . . . held: "Where relief may be granted on other nonconstitutional

grounds, exhaustion is required." · Montana Chapter of Ass'n of Civilian Technicians . . . . The decision would have been the opposite if the Court had applied the last sentence of § 704 of the APA. The court said nothing about inadequacy of an administrative remedy when the main question is constitutionality and when the agency has no authority to decide that question.
K. Davis, Administrative Law of the Seventies § 20.04, at 458 (1976).
   The last sentence of § 704 provides: "Except as otherwise expressly required by statute, agency action otherwise final is final for the

*Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 20, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974); *Allen 'v. Grand Central Aircraft Co.*, 347 U.S. 535, 553, 74 S.Ct. 745, 98 L.Ed. 933 (1954); *Aircraft & Diesel Corp. v. Hirsch*, 331 U.S. 752, 772, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947); *Monolith Portland Midwest Co. v. Reconstruction Finance Corp.*, 178 F.2d 854, 858 (9th Cir. 1949), *cert. denied*, 339 U.S. 932, 70 S.Ct. 668, 94 L.Ed. 1352 (1950).[6]

■ In the instant case appellants have never presented their contention to the SSA or Secretary. Yet · administrative procedures are available to appellants and even their counsel acknowledges that the Secretary has been responsive at least in part to criticisms of the SSA's rendering of informal advice.[7] *Montana Chapter of Civilian Technicians* requires that the present suit not go forward prior to administrative consideration.[8]

. Appellants respond that this court should excuse their failure to exhaust[9] for two main reasons. First, they argue that *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), means that exhaustion should not be required.

In *Eldridge* appellant had formally applied for and received benefits under Title II of the Social Security Act. When his benefits were later terminated, he filed suit rather than pursue administrative reconsideration. The Supreme Court noted that § 205(g) of the Act, 42 U.S.C. § 405(g), required that prior to judicial review "there be a final decision by the Secretary after a hearing." *Id.* at 328, 96 S.Ct. at 899. The Court continued:

> [T]his condition consists of two elements, only one of which is purely "jurisdictional" in· the sense that it cannot be "waived" by the Secretary . . . . The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary. Absent such a claim there can be no "decision" of any type. ·

*Id.* The Court then found that Eldridge had "specifically presented the claim that his benefits should not be terminated" to the Secretary, thereby satisfying the nonwaivable component. *Id.* at 329, 96 S.Ct. at 900. The Court then concluded that even though Eldridge had not utilized all the

purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of . reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority." 5 U.S.C. § 704. We fail to see how *Montana Chapter* conflicts with this sentence. *See Davis v. Nelson*, 329 F.2d 840, 846–47 (9th Cir. 1964). Moreover, we believe that Professor Davis overlooked the critical judicial policy of avoiding unnecessary constitutional adjudication. The *Montana Chapter* decision acknowledged the doctrine of administrative law that generally administrative agencies lack competence to decide constitutional questions. But the decision also recognized that the prudent judicial rule against unnecessary constitutional adjudication could be effectuated in a manner consistent with the limitation upon administrative competence by allowing the administrative agency to resolve disputes on nonconstitutional grounds prior to judicial intervention.

6. The parties agree that § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), incorporates an exhaustion of administrative remedies requirement. While the other statutory provi-

sions relied upon by appellants may not expressly require exhaustion, the courts have implied this requirement when necessary to effectuate the important policies underlying the exhaustion doctrine. *See, e. g., Frey v. Commodity Exch. Auth.*, 547 F.2d 46, 49 (7th Cir. 1976); *Montana Chapter of Ass'n of Civilian Technicians, Inc. v. Young*, 514 F.2d 1165, 1167–68 (9th Cir. 1975); *Wallace v. Lynn*, 165 U.S.App. D.C. 363, 507 F.2d ·1186, 1189 (1974); *Beale v. Blount*, 461 F.2d 1133, 1140 .(5th Cir. 1972).

7. *See* note 11 and accompanying text *infra.*

8. Although the "[a]pplication of the rule [requiring exhaustion] is not jurisdictional, but calls for the sound exercise of judicial discretion," it is not lightly to be disregarded. *Kale v. United States*, 489 F.2d 449, 454 (9th Cir. 1973), *cert. denied*, 417 U.S. 915, 94 S.Ct. 2617, 41 L.Ed.2d 220 (1974). Given appellants' failure to invoke any administrative processes, we do not believe that the district court could properly exercise its discretion to excuse that failure in the instant case. .

9. *See* note 4 *supra.*

possible administrative steps, the waivable element had been satisfied. The Court noted that Eldridge's constitutional challenges were independent of his personal entitlement and that agency resolution of his case on nonconstitutional grounds "would not answer his constitutional challenge." *Id.* at 332, 96 S.Ct. at 901.

Rather than indicating that appellants' failure to present their claim to the Secretary should be excused, *Eldridge* suggests that this court should not excuse the failure.[10] The Supreme Court carefully noted that Eldridge had satisfied the "nonwaivable" requirement of presenting his claim to the Secretary. In the instant case, however, appellants have never presented their claims for benefits dating from their "informal denials" to the Secretary. They have thus not satisfied the "manifestly reasonable" policy enunciated in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), and reiterated in *Eldridge*, that "the Secretary [should have] the opportunity prior to constitutional litigation to ascertain, for example, that the particular claims involved are neither invalid for other reasons nor allowable under other provisions of the Social Security Act." 422 U.S. at 762, 95 S.Ct. at 2465; *see* 424 U.S. at 332, 96 S.Ct. 893.

The Supreme Court's analysis as to the "waivable" component followed the equitable policy that exhaustion will not be required when it would be fruitless, the Court noting that the Secretary could not respond to Eldridge's constitutional challenge. The Court reaffirmed this approach in *Mathews v. Diaz*, 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed. 478 (1976). There the Court found that the "nonwaivable" element had been satisfied. The Secretary, however, had never formally denied the application. The Court noted:

The plaintiffs in *Salfi* alleged that their claims had been denied by the local and regional Social Security offices and that the only question was one of constitutional law, beyond the competence of the Secretary to decide. These allegations did not satisfy the exhaustion requirements of § 405(g) or the Secretary's regulations, but the Secretary failed to challenge the sufficiency of the allegations on this ground. We interpreted this failure as a determination by the Secretary that exhaustion would have been futile and deferred to his judgment that the only issue presented was the constitutionality of a provision of the Social Security Act.

The same reasoning applies to the present case. Although the Secretary moved to dismiss for failure to exhaust administrative remedies, at the hearing on the motion he stipulated that no facts were in dispute, that the case was ripe for disposition by summary judgment, and that the only issue before the District Court was the constitutionality of the statute. As in *Salfi*, this constitutional question is beyond the Secretary's competence. . . . For jurisdictional purposes, we treat the stipulation . . . as tantamount to a decision denying the application and as a waiver of the exhaustion requirements.

*Id.* at 76–77, 96 S.Ct. at 1889 (footnotes and citation omitted.)

In the present case, resort to administrative processes would not be pointless. The Secretary could meet appellants' objections by a decision on the nonconstitutional issues appellants have raised. Indeed, counsel for appellants has acknowledged that the Secretary has proposed new regulations which would rectify at least some of the problems appellants suggest.[11] Given this receptivity to the kinds of problems raised by appel-

10. Although *Eldridge* dealt specifically with the review provisions of the Social Security Act, the policies it discusses apply to the present action contesting SSA policies regardless of the particular statutory grants of subject matter jurisdiction invoked. *Compare Eldridge with Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972); *McKart v. United States*, 395 U.S. 185, 193–95, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Casey v. FTC*, 578 F.2d 793, 798 (9th Cir. 1978); *Montana Chapter of Ass'n of Civilian Technicians, Inc. v. Young*, 514 F.2d 1165, 1168 (9th Cir. 1975).

11. For the contents of the proposed rules, see 43 Fed.Reg. 39266 (1978) (to be codified in 20 C.F.R. Part 404).

lants, we cannot conclude that resort to the administrative processes would inevitably prove fruitless.

■ Appellants argue secondly that the Secretary's writing requirement constitutes an insurmountable obstacle to their invoking administrative processes and therefore exhaustion should be excused.[12] We, would, of course, look askance at the Secretary's insistence that administrative processes be exhausted were the Secretary also to make invocation of those processes impossible or impractical. But in the instant case the Secretary has indicated that appellant Murillo could have contested his date of initial eligibility "at any time in conjunction with his May 1974 [written] application," and that "[w]ith respect to the putative class, all its members need do to have full appeal rights under the Act is file a written application." Given that he will apparently consider whether to confer benefits from the date of "informal denials" if appellants now file a formal, written application, the Secretary has not created an unfair obstacle to invocation of his administrative processes.[13]

We of course express no opinion as to the legality, constitutionality, or advisability of the Secretary's present regulations and practices or as to whether appellants' claims should be administratively accepted or rejected. We hold only that given that the appellants have never formally asked the Secretary to consider their claims, that such consideration could obviate the need for constitutional adjudication, and that such consideration is practical, appellants should be required to invoke administrative processes before asking for judicial relief. We therefore vacate the district court's judgment that it lacked statutory jurisdiction, and remand to the district court to dismiss the suit without prejudice.

VACATED and REMANDED.

---

12. In their brief appellants write:

> The Secretary simply will not hear Murillo's claim because of his failure to fulfill the Secretary's *sine qua non*, the filing of a *written* application. That is the reason for this lawsuit.

In requiring that appellants comply with the Secretary's written application requirement prior to obtaining judicial relief, we express no opinion as to the proper resolution of the constitutionality or legality of the requirement if properly before this court. We hold only that the requirement is not an insurmountable obstacle to administrative action which would excuse the bypassing of administrative processes. We note also that appellant Murillo failed to raise the question of his entitlement to January through May benefits or the entire question of "informal denials" in his May application even though the Secretary acknowledges that he would have considered those issues in the context of the May application.

13. Referring to the language from *Diaz* quoted at p. 763 *supra*, appellants also claim that the Secretary's motion for summary judgment in and of itself constituted a waiver of the exhaustion requirement. In *Diaz* the Secretary acknowledged that the only remaining issues were constitutional and thus beyond the competence of the agency. In the instant case, however, the Secretary has not agreed that resort to administrative processes would be pointless. There remain nonconstitutional issues within the competence of the SSA and Secretary which could resolve the instant lawsuit. We therefore cannot interpret the Secretary's request for summary judgment to constitute a "waiver" of the prudent judicial rule calling for initial resort to administrative processes especially when those processes may obviate the need for constitutional adjudication.